The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Ballance. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award.
* * * * * * * * * * *
Following the initial hearing on 14 January 1994, the deposition testimony of Drs. Subin, Brenner and Naso was taken and submitted. All Exhibits introduced during deposition testimony are admitted into evidence and the medical records of Dr. Fattah Mirian submitted on 16 August 1994 are admitted into evidence. All objections raised during deposition testimony are ruled upon according to law.
* * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as
STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act, the defendant-employer regularly employing three or more employees.
2. The employer-employee relationship existed between the plaintiff and the defendant-employer.
3. The Travelers Insurance Company is the compensation carrier on the risk.
4. The plaintiff's average weekly wage is as indicated on an Industrial Commission Form 22 stipulated to and submitted at the hearing.
5. At the hearing, the parties stipulated to the admission of Stipulated Exhibit 1, which contains all medical records (although the records were supplemented in the depositions). The parties also stipulated to Stipulated Exhibit 2 (Form 19). Additionally, defendants submitted various Exhibits.
* * * * * * * * * * * * * * * * * * * * * * *
Based upon all the competent, credible evidence of record herein, the undersigned makes the following additional
FINDINGS OF FACT
1. At the time of hearing, plaintiff was 29 years old and had completed high school.
2. Plaintiff began working for Farley Industries, Inc. (Richmond Apparel) on 13 February 1989 in the sewing department. Plaintiff last worked for said defendant-employer on 18 June 1992.
3. Plaintiff worked as a joiner with defendant-employer. Her job required her to move her left foot on a repetitive basis all day long, which included her going up and down on her toes and then back on her heel, while joining elastic in the Elastic Department. She would use her foot to pump a pedal continuously at the sewing machine. Simultaneously with using the left leg on the pedal, she would take her right knee and right leg and hit a button with that lower right extremity. She also pulled and joined elastic, to be sewed with the sewing machine. This job was a production job and required rapid, repetitive motion.
4. Plaintiff testified that in March of 1992 she began to experience problems consisting of sharp pains running up and down her right knee and the bottom of her foot. The medical records, however, indicate that the first problems reported involved the left knee, leg and foot. Plaintiff also testified that she began to experience problems with her hands in March, 1992. Dr. Vetter's records from plaintiff's 12 March 1992, 19 March 1992 and 26 March 1992 do not note any complaints of pain in the right or left hand. Dr. Hall's notes from plaintiff's 5 May 1992, 13 May 1992, and 27 May 1992 examinations do not note any complaints of pain in the hands.
5. Plaintiff sought treatment with Dr. J. S. Vetter, a family practitioner on 12 March 1992 and at said time reported that the onset of pain occurred on Monday (9 March 1992). Dr. Vetter's examination indicated that plaintiff demonstrated tenderness in the left hip radiating down the left leg. He diagnosed bursitis of the left hip. Plaintiff had no tenderness in the lower back at said time. Dr. Vetter took plaintiff out of work for one week. By 19 March 1992, plaintiff reported to Dr. Vetter that her left leg was much better, but she was still having a lot of pain. Plaintiff also complained that her right calf was starting to hurt and that she was experiencing tenderness in the lower lumbar area. These new problems developed during the week that plaintiff was out of work with instructions to rest, elevate her leg and to limit sitting and walking. Dr. Vetter took plaintiff out of work for another week.
6. Upon re-examination on 26 March 1992, plaintiff reported that her legs were much better, but she was still having some pain. Her x-rays and physical examination were normal, except for some slight bilateral tenderness during examination. Plaintiff was released to return to work with a note that she should return for recheck in two weeks if the pain persisted.
7. Plaintiff's next visit to Dr. Vetter was on 22 April 1992. She reported that she had been beaten by her boyfriend and was unable to work. She presented with a swollen left eye, tenderness in the neck, shoulders and lower orbit, slight swelling and multiple contusions. As a result, and at her request, Dr. Vetter's office asked Richmond Apparel to give plaintiff a one week medical leave from 22 April through 29 April 1992.
8. When plaintiff returned from leave, she was moved to a new job as a tacker. As plaintiff confirmed in her testimony, the tacking job was a lighter job than the joining elastic job. Plaintiff, however, determined that she could not do the tacking job due to multiple pains in her legs, neck, back and shoulders.
9. Plaintiff sought treatment with Dr. Daniel C. Hall, a family practitioner on 5 May 1992, 13 May 1992 and 27 May 1992. On her initial visit, her chief complaints related to right extremity pain. Dr. Hall took plaintiff out of work for one week on 5 May 1992 and upon her return visit on 13 May 1992, plaintiff reported to Dr. Hall that her right leg pain had improved but she had begun to experience pain in the left leg. Plaintiff had reported a similar incident of transferred pain during her treatment with Dr. Vetter in March, 1992. On both occasions, the pain developed in the opposite extremity during the period while plaintiff was not working.
10. On 12 June 1992, in response to plaintiff's continued complaints regarding pain, defendant-employer sent her to an orthopedic specialist, Dr. Glen D. Subin, M.D. Upon examination, plaintiff complained of pain in the neck, spine and both legs. She told Dr. Subin she thought this pain came from using the pedals of her sewing machine. Her x-rays taken that day as well as those from March, 1992 were normal Dr. Subin found plaintiff's problems to be so diffuse in nature that he could not pinpoint any exact problem or cause. Dr. Subin released plaintiff to return to her regular duties with no restrictions.
11. Plaintiff returned to work, and on 18 June 1992, her department manager, Tim Brockman observed plaintiff just sitting at her machine. He questioned her, and she told him that she was not going to do the tack job any more. Mr. Brockman told plaintiff that he would have to consider that "a quit". Plaintiff went to the personnel manager, Johnnie Morman, and told him that the job was hurting her and she was not going to do it any more. She acknowledged to Mr. Morman that her doctor had told her to go back and do the job but stated that she could not do it. Plaintiff told Mr. Morman that they would have to fire her because she would not quit. Mr. Morman offered to call a doctor and base his decision on what the doctor advised. Plaintiff refused to return to work pending a doctor's decision and her refusal was regarded as "a quit". At said time, plaintiff's conduct constituted a refusal of suitable employment.
12. Plaintiff sought treatment with Dr. Fred McQueen on 5 June 1992 for pain in both legs and feet. Dr. McQueen recommended that she be switched to another job. On 18 June 1992, after leaving defendant-employer's plant, plaintiff returned to Dr. McQueen complaining of neck and arm pain. Dr. McQueen speculated that plaintiff may have been suffering from "arthritis vs. collagen vascular disease".
13. On 31 August 1993 surgery was performed by Dr. George A. Ferre on plaintiff's left wrist for a recurrent ganglion cyst which was not work related. Dr. Ferre had previously treated plaintiff on 12 November 1992 and believed that plaintiff needed a work up to include an MRI of the cervical spine. No MRI was done at said time. The records indicate that plaintiff's next visit to Dr. Ferre was 3 August 1993. An MRI which was done on 11 August 1993 showed a possible mild central bulge of the disk at C5-6 which reportedly was of doubtful clinical significance. In a letter dated 8 June 1993, Dr. Ferre indicated that he did not evaluate plaintiff on 12 November 1992 for an industrial injury.
14. On 27 August 1992, plaintiff was seen by Dr. Mark E. Brenner, an orthopedic specialist, upon referral from Dr. Fattah Mirian. She complained to Dr. Brenner about generalized joint pain. She recalled no specific instance of trauma and stated that she hurt all the time with virtually every activity. Dr. Brenner found her symptoms to be suggestive of generalized fibrositis. Dr. Brenner opined that plaintiff's condition was not caused by her work at Richmond Apparel. His opinion was based upon a comparison of her initial examination of plaintiff in August, 1992 with his re-examination of plaintiff on 24 March 1994, and his review of the job function video. (Defendants' Exhibit 7) during his deposition. Plaintiff had an Independent Medical Evaluation by Dr. Stephen J. Naso, Jr. on 7 January 1994. Dr. Naso opined that plaintiff's condition was not job related. Dr. Naso reviewed the records of other doctors in rendering his opinion. Dr. Naso further found that there was no evidence that plaintiff was not capable of working and that there was no evidence either by history or examination that plaintiff had a nerve compression problem.
15. Plaintiff exhibited pain in her hands at the time of hearing. Possible swelling was also noted on the record. Plaintiff's job with defendant-employer was not a significant contributing cause of the pain and tenderness of the hands exhibited by plaintiff at the hearing.
16. Plaintiff's job with defendant-employer did not cause, or significantly contribute to plaintiff's multi-centric, or diffuse pain symptoms in her hands, legs, back, neck, shoulders, knees and feet, nor her generalized fibrositis. Plaintiff's employment did not expose her to a greater risk than the general public of contracting said conditions.
17. After leaving Richmond Apparel, plaintiff received unemployment benefits of $172.00 a week for at least ten weeks.
18. Plaintiff's average weekly wage was $307.30, yielding a compensation rate of $204.87.
* * * * * * * * * * * * * * * * * * * * * * * *
Based upon the findings of fact, the Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. Plaintiff did not sustain an injury by accident arising out of and in the course of her employment, nor has she proven that she has been disabled as a result of an occupational disease. N.C. Gen. Stat. § 97-52, 97-2(6).
2. Plaintiff has not proven that her condition, including symptoms of generalized and non-focal pain, was due to causes or conditions characteristic of and peculiar to her employment, or that her job significantly contributed to the development of her condition, or placed her at a greater risk than the general public of developing said condition. Therefore, plaintiff has failed to prove that her condition is compensable as an occupational disease. N.C. Gen. Stat. § 97-52, § 97-53(13).
3. Plaintiff refused suitable employment on 18 June 1992. N.C. Gen. Stat. § 97-32.1.
* * * * * * * * * * * * * * * * * * * * * * * *
Based on the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
AWARD
1. Plaintiff's claim must, under the law, be and hereby is DENIED.
2. Each side shall bear its own costs.
 S/ ___________________________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
S/ _________________________ THOMAS J. BOLCH COMMISSIONER
S/ _________________________ COY M. VANCE COMMISSIONER